IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ROBERT KNIGHT,** *et al.*, | * |
| | * |
|     **Plaintiffs,** | * |
| | * |
| **vs.** | *  **CIVIL ACTION NO. 23-00125-B** |
| | * |
| **KOLOS, INC.,** *et al.*, | * |
| | * |
|     **Defendants.** | * |

**ORDER**

This action is before the Court[1] on Defendants' motion for partial summary judgment (Doc. 59). Plaintiffs timely filed their response and evidentiary materials in opposition to the motion. (Docs. 61, 62). Defendants timely filed their reply. (Doc. 63). Thus, the motion has been fully briefed and is ripe for review. Upon consideration of the motion, response, reply, evidentiary materials, and relevant law, the Court finds that the motion for partial summary judgment (Doc. 59) is due to be **DENIED**.

**I.   BACKGROUND**

    **A.   Procedural Background**

This personal injury action arises out of a rear-end collision on Interstate 65 in Conecuh County, Alabama. On February 2, 2023,

---

[1] The parties consented to have the undersigned Magistrate Judge conduct any and all proceedings in this civil action and to order the entry of a final judgment. (Docs. 7, 9). Thus, this action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 10).

Plaintiffs Robert Knight ("Knight") and Lester Curry ("Curry") (collectively "Plaintiffs") filed suit against Defendants Kolos, Inc. ("Kolos") and Ibraheem Mohammad Abdelrahman ("Abdelrahman") (collectively "Defendants") in the Circuit Court of Conecuh County, Alabama. (Doc. 1-2 at 2-8). Plaintiffs' complaint contains claims for negligence (count one) and wantonness (count two), which are asserted against both Defendants, as well as a claim for negligent hiring, retention, supervision, monitoring, and/or training (count three), which is asserted only against Kolos. (Id. at 5-8). This action was removed to federal court on April 12, 2023 (Doc. 1), and it is presently before the Court on Defendants' motion for partial summary judgment as to Plaintiffs' wantonness claims (Doc. 59).

### B.   Factual Background[2]

The accident that gave rise to this lawsuit occurred shortly after 9:00 a.m. on August 4, 2022, on Interstate 65 in Conecuh County, Alabama. (Doc. 1-2 at 4; Doc. 61-2 at 3; Doc. 62-1). The accident involved Abdelrahman, a commercial truck driver who was driving a tractor-trailer hauling automobiles for Kolos;[3] Curry,

---

[2] The "'facts', as accepted at the summary judgment stage of the proceedings, may not be the 'actual' facts of the case." Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 925 n.3 (11th Cir. 2000).

[3] Defendants acknowledge that Abdelrahman was working within the line and scope of his employment with Kolos and was driving a 2022 (Continued)

2

who was driving a 2005 Ford F-350 towing a trailer loaded with building equipment; and Knight, who was a passenger in Curry's vehicle. (Doc. 1-2 at 3-5; Doc. 59 at 1-2).

Both vehicles were traveling southbound on Interstate 65 in the right-hand lane. (Doc. 1-2 at 4; Doc. 61-2 at 8; Doc. 62-1). Curry's truck was traveling in front of Abdelrahman's tractor-trailer. (Doc. 62-1). There were no vehicles between them in the right-hand lane. (Doc. 59-1 at 8; Doc. 61-2 at 8-9; Doc. 62-1). It was a sunny day, and road conditions were clear. (Doc. 61-2 at 8; Doc. 62-1). From the cab of his truck, Abdelrahman had an elevated vantage point that allowed him to see down the road a long way, and his view of the trailer towed by Curry's truck was straight and unimpeded. (Doc. 61-2 at 9-10). Abdelrahman saw the trailer "probably half a mile ahead" before he eventually made impact with it. (Doc. 59-1 at 8; Doc. 61-2 at 15). During that half mile, there were no vehicles between Abdelrahman's tractor-trailer and the trailer towed by Curry. (Id.). Although Abdelrahman testified that Plaintiffs were "going slow" and "under the speed limit,"[4] Curry's truck was traveling forward, it was not

---

Western Star owned by Kolos at the time of the subject accident. (Doc. 59 at 1).

[4] Abdelrahman estimated that Plaintiffs were traveling 45 miles per hour at the time of the collision. (Doc. 63-1 at 4). Defendants' accident reconstruction expert estimated that Plaintiffs were traveling 43 miles per hour at the time of impact. (Doc. 63-2 at 4).

3

stopped on the roadway, and there is no evidence that it slowed down significantly shortly before being rear-ended. (Doc. 59-1 at 7; see Doc. 62-1).

The parties agree that the speed limit on the interstate was 70 miles per hour. (See Doc. 61 at 1; Doc. 63 at 1). Dash camera video from the tractor-trailer, which includes information from its Garmin GPS system, shows that Abdelrahman increased his speed from 66 to 71 miles per hour just seconds before the crash and was traveling 71 miles per hour at the time of impact. (See Doc. 62-1).[5] Abdelrahman testified that he had a specific memory of going 70 miles per hour at the time of the collision. (Doc. 59-1 at 6; Doc. 61-2 at 8; Doc. 63-1 at 1-2). Kolos' corporate representative testified that Kolos asks its drivers to drive slower - between 64 and 67 miles per hour - while traveling in the right lane. (Doc. 61-3 at 3). Plaintiffs' liability expert testified that Abdelrahman's speed at the time of impact was very close to 69 miles per hour. (Doc. 61-4 at 5). Defendants' accident reconstruction expert testified that Abdelrahman increased his speed from 70 to 72 miles per hour a few seconds before impact, but then applied his brakes before impact and had slowed down to 52 miles per hour at the time of impact. (Doc. 61-5 at 3; Doc. 63 at 3-4; Doc. 63-2 at 1-3).

---

[5] The dash camera video is 30 seconds long and begins approximately 13 seconds before the time of the collision. (See Doc. 62-1).

4

The dash camera video appears to show that Abdelrahman was not maintaining his lane in the seconds leading up to the accident. (See Doc. 62-1). Parts of the tractor-trailer appear to cross the right-hand fog line for several seconds prior to the collision. (See Docs. 61-7; 62-1). Based on the video, Defendants' accident reconstruction expert agreed that the tractor-trailer's right-hand tires crossed the fog line in the seconds before the crash. (Doc. 61-5 at 5-6; see also Doc. 61-4 at 5). Although not mentioned by the parties, the video also appears to show the left side of the tractor-trailer crossing slightly into the left-hand southbound travel lane of the interstate immediately before and during the time of impact. (See Doc. 62-1).

Abdelrahman testified that at the time of the accident, he was on a phone call with a travel agent, who was giving him information about an upcoming trip to Cancun, Mexico. (Doc. 59-1 at 10; Doc. 61-2 at 16-17). Abdelrahman testified that he was using an earpiece connected to his cell phone via a wireless Bluetooth connection. (Doc. 59-1 at 11). He denied that he was texting or using any type of "app" or web browser when the crash occurred. (Doc. 63-1 at 5).

II. **STANDARD OF REVIEW**

A party in a lawsuit may move a court to enter summary judgment on a claim before trial. Fed. R. Civ. P. 56(a), (b). Summary judgment is appropriate when the moving party establishes

5

"that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Greenberg v. BellSouth Telecomms., Inc., 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) ("Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"). "[T]he substantive law will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). At the summary judgment stage, the court does not "weigh the evidence and determine the truth of the matter" but solely "determine[s] whether there is a genuine issue for trial." Id. at 249. Only disputes about the material facts will preclude the granting of summary judgment. Id.

The moving party bears the initial burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

6

evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. Clemons v. Dougherty County, Ga., 684 F.2d 1365, 1369 n.5 (11th Cir. 1982).

Once the moving party meets its burden under Federal Rule of Civil Procedure 56, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (per curiam). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Moore ex rel. Moore v. Reese, 637 F.3d 1220, 1232 (11th Cir. 2011) (quoting Anderson, 477 U.S. at 248). The court must view the facts and draw all reasonable inferences in favor of the non-moving party. Id.; Greenberg, 498 F.3d at 1265 ("We view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion."). However, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "Speculation does not create a *genuine* issue of fact." Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005) (emphasis in original) (quotation omitted). "If the evidence is merely colorable, or is not

7

significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted).  In short, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing that is sufficient to establish the existence of an element that is essential to that party's case.  Celotex, 477 U.S. at 322.

## III. **DISCUSSION**

Defendants contend there is no evidence to support Plaintiffs' claims of wantonness against Abdelrahman and Kolos. Specifically, Defendants argue there is "no evidence in the record of alcohol consumption, illegal drug use, texting or distracting telephone use, CB radio use, or any other actions that occurred just before or during the subject automobile accident."  (Doc. 59 at 7).  Though Defendants acknowledge that Abdelrahman was "talking through an earpiece that was connected to his cellphone via a wireless Bluetooth connection at the time of the subject accident," they assert that "it is clear that he was not texting or using an application on his phone." (Id. at 7-8).  Thus, Defendants contend that there is no evidence that would allow a reasonable jury to find conduct rising to the level of wantonness under substantive Alabama law, and they ask the Court to grant them summary judgment on Plaintiffs' wantonness claims.  (Id. at 8).

Plaintiffs counter that Abdelrahman's admitted cell phone use, coupled with several other "exacerbating circumstances,"

would allow a reasonable jury to determine that his behavior was wanton. (Doc. 61 at 8). Specifically, Plaintiffs contend there is "plentiful evidence that Abdelrahman should have realized that there was a strong probability that harm would result to Plaintiffs from his talking on the phone while speeding, violating company policy for right-lane travel speed, and failing to avoid Plaintiffs' vehicle despite seeing it a half mile in advance of the crash." (Id. at 10). Plaintiffs assert that "the dynamics of the collision," including Abdelrahman accelerating by five miles per hour and exceeding the speed limit shortly before impact even though he knew Plaintiffs' vehicle was in front of him, "are contrary to a finding that Abdelrahman was merely inadvertent." (Id. at 11). Plaintiffs contend that a jury could reasonably infer from the evidence that Abdelrahman was interacting with his phone, not paying attention to traffic at all, and consciously violated several statutory rules of the road. (Id. at 11-13). Plaintiffs also argue that a jury could reject Abdelrahman's testimony that he was only using his cell phone to talk via a hands-free earpiece device. (Id. at 13).

Under Alabama law, wantonness is "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others.'" Ala. Code § 6-11-20(b)(3); see also Blizzard v. Food Giant Supermarkets, Inc., 196 F. Supp. 2d 1202, 1209 (M.D. Ala. 2002) ("While one not need prove intentional conduct to prove

9

wantonness, wantonness requires evidence of a reckless or conscious disregard of the rights and safety of others."). Wantonness involves "the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." Ex parte Essary, 992 So. 2d 5, 9 (Ala. 2007). "To constitute wantonness, it is not necessary that the actor know that a person is within the zone made dangerous by his conduct; it is enough that he knows that a strong possibility exists that others may rightfully come within that zone." Id. Nor is it "essential that the actor should have entertained a specific design or intent to injure the plaintiff, only that the actor is 'conscious' that injury will likely or probably result from his actions." Id.

"Wantonness is a question of fact for the jury, unless there is a total lack of evidence from which the jury could reasonably infer wantonness." McCutchen v. Valley Home, Inc., 100 F. Supp. 3d 1235, 1239 (N.D. Ala. 2015) (quoting Cash v. Caldwell, 603 So. 2d 1001, 1003 (Ala. 1992)). "In the context of automobile accidents, wantonness depends on the particular facts presented in each case." Stafford v. Sunland Distribution of Fla., Inc., 2021 U.S. Dist. LEXIS 238570, at *9, 2021 WL 5909843, at *3 (M.D. Ala. Dec. 14, 2021) (citing Cheshire v. Putnam, 54 So. 3d 336, 342 (Ala. 2010) (per curiam)). "[T]he actor's knowledge may be proved by

10

showing circumstances from which the fact of knowledge is a reasonable inference; it need not be proved by direct evidence." Hicks v. Dunn, 819 So. 2d 22, 24 (Ala. 2001) (quotations omitted).

"Absent some evidence of impaired judgment, such as from the consumption of alcohol," Alabama courts "do not expect an individual to engage in self-destructive behavior." Essary, 992 So. 2d at 12. However, some acts are "so inherently reckless that [courts] might otherwise impute to [the defendant] a depravity consistent with disregard of instincts of safety and self-preservation." Id. "That is, when a defendant's allegedly wanton conduct toward others would also endanger the defendant, the evidence must support finding that the defendant's wantonness extended to her own safety." Tutor v. Sines, --- So. 3d ----, 2023 Ala. LEXIS 9, at *5, 2023 WL 2054060, at *2 (Ala. Feb. 17, 2023).

Exceeding the speed limit does not, by itself, amount to wantonness. Hicks, 819 So. 2d at 24. However, "speed, coupled with other circumstances, may amount to wantonness." Id.; see State Farm Mut. Auto. Ins. Co. v. Wood, --- So. 3d ----, 2023 Ala. LEXIS 117, at *19, 2023 WL 6933843, at *6 (Ala. Oct. 20, 2023) (finding that "evidence of an unsafe lane change in a speeding case is an additional circumstance that can support a finding of wantonness"). Similarly, Alabama courts have "declined to find substantial evidence of wantonness merely on the ground of

11

distracted driving." Tutor, 2023 Ala. LEXIS 9, at *11, 2023 WL 2054060, at *4. However, "evidence of distracted driving can be evidence of wantonness when the distraction results from the conscious doing of some act or the omission of some duty." Id. (quotation omitted). "For that reason, active phone use like texting, browsing the Internet, or engaging with a music app is qualitatively different from distractions that are not the result of a conscious act or that arise from an inadvertent reaction to some external event or stimulus." Id.

Having carefully reviewed the evidence, the Court finds that there is a genuine dispute of material fact as to whether Abdelrahman acted recklessly or with conscious disregard of the rights or safety of others. Abdelrahman admits that he was using his cell phone when the accident occurred. Although Abdelrahman says that he was using a hands-free earpiece to talk on his phone at the time of the accident, a jury could reasonably discredit this assertion, particularly given the evidence of his unsafe and erratic driving leading up to the time of the accident. Abdelrahman acknowledges that he first saw Plaintiffs' truck and trailer when he was a half mile behind them, and that he had an unobstructed view of the trailer from time he first saw it through the time he crashed into the back of it. Not only was Abdelrahman using use his phone while driving, but the dash camera video also shows that he was not maintaining his lane in the seconds leading

12

up to the accident. He crossed partly onto the right shoulder of the interstate without correcting back into his lane for several seconds, and it appears that he then crossed slightly into the left southbound travel lane immediately before crashing into Plaintiffs' trailer. The video also shows that Abdelrahman actually *accelerated* by five miles per hour in the seconds before the accident, despite the clear and rapidly nearing presence of Plaintiffs' trailer. In doing so, Abdelrahman crossed the speed limit threshold and was traveling above the speed limit at 71 miles per hour at the time of impact.

Under these circumstances, a jury could reasonably infer that Abdelrahman decided to engage with his cell phone and avert his attention from the road while driving his heavy commercial vehicle at a high speed, despite being aware of the danger this would pose to himself and others traveling on the interstate, and that Abdelrahman's behavior was inherently reckless. See Green v. Markovitch, 385 F. Supp. 3d 1190, 1196 (N.D. Ala. 2019) (denying defendants' motion for summary judgment on plaintiffs' wantonness claim where defendant driver admitted he was using a hands-free headset device to talk on his phone at the time of the accident, dash camera video showed that several vehicles were on the road and that the defendant driver was driving 75 miles per hour in a 70 mile per hour zone when the crash occurred, and defendant knew of these road conditions and that he was talking on his phone but

13

still opted to change lanes without making sure that he was clear of plaintiffs' vehicle being doing so); Jones v. Richardson, 2023 U.S. Dist. LEXIS 213205, at *11-12, 2023 WL 8284375, at *5 (N.D. Ala. Nov. 30, 2023) (concluding that a reasonable jury could find that defendant driver's behavior was wanton when he averted his eyes from the interstate multiple times during an almost eight second time period while trying to change to an audio feed to play over his truck's system). Accordingly, the Court finds that Defendants' motion for partial summary judgment as to Plaintiffs' wantonness claims is due to be denied.

### IV. CONCLUSION

For the reasons stated above, Defendants' motion for partial summary judgment (Doc. 59) is **DENIED.**

**DONE** this **22nd** day of **April, 2024.**

　　　　　　　　　　　　　　　　　　**/s/ SONJA F. BIVINS**
　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**